FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERESA P., | No. 1:19-CV-03143-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney Victoria Chhagan represents Teresa P. (Plaintiff); Special Assistant United States Attorney Benjamin Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 12, 2015 and April 22, 2016, respectively, alleging disability since February 1, 2010, due to fibromyalgia, arthritis in her back, PTSD, anxiety, and depression. Tr. 79. The applications were denied initially and upon reconsideration. Tr. 142-48, 150-69. Administrative Law Judge (ALJ) Tom Morris held a hearing on December 8, 2017, Tr. 38-77, and issued an unfavorable decision on June 19, 2018, Tr. 15-32. Plaintiff requested review by the Appeals Council. Tr. 220-21. The Appeals Council denied Plaintiff's request for review on April 16, 2019. Tr. 1-6. The ALJ's June 2018 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 20, 2019. ECF No. 1.

**STATEMENT OF FACTS**

Plaintiff was born in 1974 and was 36 years old as of her alleged onset date. Tr. 29. She completed high school and some college coursework. Tr. 40, 561, 783. Her work history consists of housekeeping and waitressing. Tr. 47. She has alleged depression since childhood, due to abuse and sexual assault. Tr. 361, 560, 782. She has experienced wide-spread body pain, diagnosed as fibromyalgia, stemming from various injuries and car accidents. Tr. 336, 806.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

1  defined as being more than a mere scintilla, but less than a preponderance. *Id*. at

2  1098. Put another way, substantial evidence is such relevant evidence as a

3  reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

4  *Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one

5  rational interpretation, the Court may not substitute its judgment for that of the

6  ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*,

7  169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the

8  administrative findings, or if conflicting evidence supports a finding of either

9  disability or non-disability, the ALJ's determination is conclusive. *Sprague v.*

10  *Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision

11  supported by substantial evidence will be set aside if the proper legal standards

12  were not applied in weighing the evidence and making the decision. *Brawner v.*

13  *Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

15  The Commissioner has established a five-step sequential evaluation process

16  for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a),

17  416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through

18  four, the burden of proof rests upon the claimant to establish a prima facie case of

19  entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is

20  met once a claimant establishes that a physical or mental impairment prevents the

21  claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4),

22  416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds

23  to step five, and the burden shifts to the Commissioner to show (1) the claimant

24  can make an adjustment to other work; and (2) the claimant can perform specific

25  jobs that exist in the national economy. *Batson v. Commissioner of Social Sec.*

26  *Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an

27  adjustment to other work in the national economy, the claimant will be found

28  disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On June 19, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, fibromyalgia, sprains and strains, spine disorders, affective disorders, and anxiety disorders. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light exertion level work with the following limitations:

> lifting or carrying no more than twenty pounds occasionally with frequent lifting or carrying of objects weighing up to ten pounds. The claimant is able to sit for six hours in an eight-hour workday with normal breaks and stand or walk for four hours in an eight-hour workday or have work tasks that permit working with a sit/stand option. She can frequently kneel and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant is limited to only occasional stooping and crawling. She should avoid concentrated exposure to cold, vibration, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. She should avoid even moderate exposure to hazards, such as dangerous machinery and unprotected heights. The claimant is capable of understanding and recalling short, simple instructions consistent with unskilled work tasks. She can maintain adequate attendance and concentration, pace and persistence for simple routine tasks. There can be frequent contact with coworkers if it involves a group of five or less people, but there should be no contact with the general public for work tasks. There can be occasional changes to the work environment with a day's notice. The claimant is not able to perform at a production rate pace (e.g., assembly line work as where the pace is mechanically controlled) but

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

can perform goal oriented work or where the worker has more control over the pace. She may be off-task up to ten percent of the workday. Tr. 20-21.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a cleaner/housekeeper or waitress. Tr. 29.

At step five the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of outside deliverer, coin machine collector, and document preparer. Tr. 29, 31.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly rejecting medical opinion evidence; (2) improperly rejecting Plaintiff's subjective testimony; and (3) improperly rejecting the lay witness testimony.

## DISCUSSION

### 1.    Plaintiff's subjective statements

Plaintiff contends the ALJ erred by improperly rejecting her subjective statements. ECF No. 15 at 14-18.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 22. The ALJ explained that he found the objective findings in the case failed to provide strong support for Plaintiff's allegations. Tr. 22-24.

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The ALJ's summary of Plaintiff's treatment over the years does not on its own constitute a clear and convincing basis to discount her allegations of disabling pain and other symptoms.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

1    Furthermore, the Court takes note that fibromyalgia is not a condition that

2 generally lends itself to extensive objective findings. *See generally*, Social Security

3 Ruling 12-2p; *Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017). It is not

4 clear that the normal or unremarkable exam findings identified by the ALJ, such as

5 normal gait, intact sensation, or only mildly reduced strength, have any bearing on

6 the existence or severity of Plaintiff's fibromyalgia, and the ALJ cited to no

7 medical source that indicated as much. As Plaintiff points out in her briefing, no

8 treating medical source indicated that the findings on exam were inconsistent with

9 Plaintiff's allegations. ECF No. 15 at 17.

10    Defendant argues the ALJ also discounted Plaintiff's allegations based on

11 her limited ongoing mental health treatment. ECF No. 16 at 5. The Court finds the

12 ALJ did not clearly link Plaintiff's lack of mental health treatment to his

13 assessment of her reliability. He merely mentioned in the midst of his summary of

14 the treatment evidence and various opinions that "the claimant received limited

15 ongoing mental health treatment" and then summarized the findings showing

16 unremarkable mental status. Tr. 26. Additionally, even if the ALJ did intend to find

17 Plaintiff's allegations to be undermined by her lack of mental health treatment, an

18 ALJ may not find a claimant's statements to be unsupported on this basis without

19 first considering the reasons why she has not sought more treatment. Social

20 Security Ruling 16-3p. The Ruling notes such possibilities as lack of access due to

21 finances, the individual may have found ways to cope by minimizing their

22 activities, having intolerable side effects from treatments, or being advised there is

23 no effective treatment to pursue. *Id.* The record indicates Plaintiff did not have

24 medical coverage at times, or had difficulty getting treatment authorized. Tr. 665,

25 694-95, 893. While it is not clear from the record that lack of access was the reason

26 she did not seek more mental health treatment, it is at minimum a possibility the

27 ALJ needed to consider prior to discrediting her for lack of treatment. The Ninth

28 Circuit has also recognized that "it is a questionable practice to chastise one with a

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Plaintiff indicated that her depression and anxiety often kept her housebound and interfered with her ability to interact with others. Tr. 338, 571, 772.

As the ALJ did not clearly link Plaintiff's lack of mental health treatment to his evaluation of her allegations, and failed to consider any possible explanations for her lack of treatment, this is not a clear and convincing basis to discount her subjective statements. A lack of support from the objective evidence alone is an insufficient basis upon which to discount a claimant's subjective allegations. Upon remand, the ALJ will reevaluate Plaintiff's testimony.

## 2.    Medical Opinion Evidence

Plaintiff asserts the ALJ improperly evaluated the medical opinion evidence by offering insufficient reasons for rejecting the opinions from Drs. Reinmuth, Crank, Barnard, and Cline, and Ms. Starr and Ms. Schwarzkopf. ECF No. 15 at 3-14.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if he provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### a. Dr. Reinmuth

Plaintiff's treating doctor, Scott Reinmuth, completed medical source statements about Plaintiff's functional abilities in 2013 and 2017. Tr. 829-30, 899-900.[1] In 2013 he opined Plaintiff was markedly impaired in lifting and carrying based on her fibromyalgia, and was severely impaired in standing, walking, lifting, carrying, and crouching based on her right foot fracture and left ankle pain/possible sprain. Tr. 829. He concluded she was limited to no more than sedentary work for two months. Tr. 800. In 2017 Dr. Reinmuth opined Plaintiff needed to lay down for an hour or more every day for pain relief, and predicted full time work would cause her condition to deteriorate, as she was unable to tolerate even mild activity without worsening symptoms. Tr. 899. He predicted she would miss four or more days of work from a full-time job, due to her reports of being bedridden many days, and being in bed for many hours even on good days. *Id.* He further stated she was severely limited in her exertional capabilities and was unable to meet the demands of even sedentary work on a sustained daily basis. Tr. 900.

The ALJ found these opinions to be "excessive in light of the longitudinal treatment history and relying too heavily on the claimant subjective reports." Tr. 25. Though he acknowledged fibromyalgia is a condition that generally carries limited objective findings, he found the level of care and clinical findings there were failed to support the extent of the limitations. *Id.*

---

[1] The ALJ mistakenly thought the 2017 opinion was completed in 2012, a position Defendant defends. Tr. 25; ECF No. 16 at 9-10. The Court acknowledges Dr. Reinmuth's handwriting is not perfect, but the date is clearly 2017. *Id.* Furthermore, the form was sent to Dr. Reinmuth by Plaintiff's representative, Merit Disability. *Id.* Plaintiff did not retain Merit Disability until 2015. Tr. 141. She also did not begin seeing Dr. Reinmuth until 2013. Tr. 347.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

Plaintiff argues the ALJ improperly relied on a limited portion of the record and cited no medical authority for his conclusion that the objective findings were insufficient to support the extent of the limits. ECF No. 15 at 3-8. Plaintiff further argues that the ALJ's conclusion regarding the limitations being inconsistent with Plaintiff's own allegations about her daily abilities was flawed, as Dr. Reinmuth was referencing Plaintiff's ability to perform activities on an on-going full-time basis. *Id.* Defendant argues that consistency with the record is a legitimate factor for the ALJ to consider in evaluating the weight due to a medical opinion, and the ALJ reasonably pointed to evidence that does not support the extent of the limits and rationally concluded the doctor relied too heavily on Plaintiff's subjective reports. ECF No. 16 at 7-11.

The Court finds the ALJ's analysis to be insufficient. In finding the opinion unsupported, the ALJ failed to explain what kind of treatment or findings were missing. Dr. Reinmuth listed objective findings that supported his opinion, including tenderness and reduced range of motion. Tr. 899. The ALJ did not explain why these findings were insufficient to support the doctor's opinion.

An ALJ may consider the nature and duration of the treatment relationship in evaluating the weight to be assigned to an opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). While Dr. Reinmuth had only treated Plaintiff a single time upon completion of the 2013 opinion, Plaintiff had reengaged in services and Dr. Reinmuth had been treating her for a year and a half at the time he completed the 2017 opinion. Tr. 871-97. The ALJ did not mention this fact, possibly due to the confusion regarding the date the opinion was completed.

If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). However, when an opinion is not

more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan v. Comm'r of Soc. Sec,* 528 F.3d 1194, 1199-1200 (9th Cir. 2008). While Dr. Reinmuth explained that his opinion regarding missed days was based on Plaintiff's report of being bed ridden much of the time, the ALJ did not offer legally sufficient reasons for discounting Plaintiff's subjective reports. *See supra.* The ALJ did not extend this rationale to the remainder of the opinion. There is no evidence that the rest of Dr. Reinmuth's opinion is more heavily based on Plaintiff's self-reports than on their year-and-a-half treatment relationship.

On remand the ALJ will reconsider the evidence provided by Dr. Reinmuth.

### b. Dr. Crank

In March 2016, Dr. Jeremiah Crank completed a form for the state Department of Social and Health Services, opining that Plaintiff was severely limited by back pain and fibromyalgia, and was unable to meet the demands of sedentary work. Tr. 792-94.

The ALJ gave this opinion little weight, finding it was inconsistent with Plaintiff's longitudinal treatment records and was unsupported by the physical exam that day, which was the first time Dr. Crank had treated Plaintiff, thus demonstrating that he did not have a longitudinal basis for his opinion. Tr. 25-26.

Plaintiff argues the ALJ did not have a medical basis for finding the exam results to be unsupportive of the opinion and did not show that the opinion was inconsistent with the remainder of the record, similar to the errors with Dr. Reinmuth. ECF No. 15 at 8-10. Plaintiff further argues that, as a treating source, Dr. Crank would have had access to Plaintiff's past medical records to review. *Id.* Defendant argues the ALJ reasonably considered the lack of treatment relationship or objective findings at the single exam in finding the opinion unreliable. ECF No. 16 at 11-13. Defendant further reiterates that the ALJ reasonably interpreted the record as a whole as being inconsistent with Dr. Crank's opinion.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

An ALJ may reasonably consider the duration and extent of a source's treatment relationship with a claimant in evaluating the reliability of an opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the ALJ was incorrect that the 2016 visit was Dr. Crank's first time evaluating Plaintiff. The records from Yakima Neighborhood Health Services show Dr. Crank examining Plaintiff as far back as May 2013. Tr. 694-97. While she met with a variety of providers at this clinic, Dr. Crank had seen her at least four times prior to completing the function report, over the span of three years. Tr. 660-64, 665-68, 680-84, 694-97.

The Court finds the same rationale as noted above with respect to Dr. Reinmuth applies to the ALJ's analysis of Dr. Crank. The discussion is not specific enough in terms of how the findings undermine the doctor's conclusions, particularly in the context of fibromyalgia. On remand, the ALJ will reconsider the evidence provided by Dr. Crank.

### c. Drs. Barnard and Cline

Plaintiff attended a number of psychological evaluations in connection with her receipt of state benefits. Dr. Barnard examined Plaintiff in 2013 and found she had mild to moderate impairment in work-related functioning. Tr. 566. Dr. Cline evaluated Plaintiff in 2016 and found similar mild and moderate limits, and suggested Plaintiff could be referred to vocational rehabilitation for reentry into the workforce following mental health treatment. Tr. 562-63.

The ALJ gave these opinions little weight, noting they were accompanied by mostly unremarkable mental status examinations[2], were cursory one-time evaluations used for the benefit of the claimant, and were checkbox opinions that did not provide function-by-function assessments of Plaintiff's limitations. Tr. 27.

---

[2] The ALJ found Dr. Cline's report was cut off and lacking the full mental status examination. Tr. 27. The records from DSHS are out of order, but the rest of the exam is contained in this record at Tr. 569.

As this claim is being remanded for further consideration of other evidence and Plaintiff's subjective reports, the ALJ shall also reconsider the psychological evaluations.

### d. Ms. Starr and Ms. Schwarzkopf

The record contains a number of functional assessments completed by non-acceptable sources, including Ms. Starr and Ms. Schwarzkopf, limiting Plaintiff to sedentary or less than sedentary work. Tr. 806-08, 817-18, 821-22. The ALJ found each of these opinions lacking in sufficient clinical findings and based primarily on Plaintiff's subjective complaints. Tr. 26.

As this claim is being remanded for further evaluation of other evidence and Plaintiff's subjective reports, the ALJ will also reconsider the opinions from the non-acceptable sources.

### 3.    Lay witness evidence

Plaintiff's friend James Hale completed a third-party function report in 2016, noting Plaintiff's difficulty with extended periods of activity, her tendency to stay in bed much of the day, and her difficulties with handling stress and paying attention. Tr. 269-75.

The ALJ gave this opinion "some weight" noting Mr. Hale did not have any medical training and was not a disinterested third-party, and that his statements were "primarily observations of the claimant's ability to function, rather than opinions as to the claimant's maximum functional capabilities." Tr. 22.

Plaintiff argues the fact that Mr. Hale does not have medical training is precisely what makes him a third party, and his relationship with Plaintiff is what gives him knowledge of how she functions, noting that the rules concerning third-parties anticipate precisely this kind of situation, and self-interest is only a relevant factor if there is some evidence that the witness exaggerated in order to benefit from the claimant's award. ECF 15 at 18-19. Defendant argues that any error in the ALJ's analysis is harmless as the ALJ gave adequate reasons for rejecting similar

evidence from Plaintiff and the third party was contradicted by more reliable medical evidence that the ALJ credited. ECF No. 16 at 6-7.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from these "other sources." *Dodrill*, 12 F.3d at 919.

The Court finds the ALJ failed to point to any germane reasons for discounting Mr. Hale's testimony. His lack of medical training and his friendship with Plaintiff are precisely what make him a third-party qualified to provide supportive testimony regarding her functioning. There is no evidence that he exaggerated his statements in order to benefit from them. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The error is not harmless, as the ALJ failed to offer legally sufficient reasons for discounting Plaintiff's similar assertions and erred in the evaluation of the medical evidence. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

On remand the ALJ will reconsider the third-party evidence along with the rest of the record.

## CONCLUSION

The ALJ's RFC determination is not supported by substantial evidence and must be reevaluated. On remand, the ALJ shall reevaluate the medical evidence, Plaintiff's subjective complaints, and the third-party evidence, and make new findings on each of the five steps in the sequential process, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.      Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3.      The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED August 17, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15